PHILLIP A. TALBERT
Acting United States Attorney
BRIAN A. FOGERTY
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. |
| Plaintiff, | PLEA AGREEMENT |
| v. | |
| ISAIH PHELPS, | |
| Defendant. | |

## I.   INTRODUCTION

**A.   Scope of Agreement.**

The Information in this case charges the defendant with violation of 18 U.S.C. § 2422(b) – Attempted Enticement of a Minor. This document and the separate sealed memorandum filed in connection with the defendant's guilty plea contain the complete plea agreement between the United States Attorney's Office for the Eastern District of California (the "government") and the defendant regarding this case. This plea agreement and the sealed memorandum are limited to the United States Attorney's Office for the Eastern District of California and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities.

**B.   Court Not a Party.**

The Court is not a party to this plea agreement. Sentencing is a matter solely within the

PLEA AGREEMENT                                             1

discretion of the Court, and the Court may take into consideration any and all facts and circumstances concerning the criminal activities of defendant, including activities which may not have been charged in the Information. The Court is under no obligation to accept any recommendations made by the government, and the Court may in its discretion impose any sentence it deems appropriate up to and including the statutory maximum stated in this plea agreement.

If the Court should impose any sentence up to the maximum established by the statute, the defendant cannot, for that reason alone, withdraw his guilty plea, and he will remain bound to fulfill all of the obligations under this plea agreement. The defendant understands that neither the prosecutor, defense counsel, nor the Court can make a binding prediction or promise regarding the sentence he will receive.

## II.     DEFENDANT'S OBLIGATIONS

### A.     Guilty Plea.

The defendant will plead guilty to the sole of count of the Information, Attempted Enticement of a Minor in violation of 18 U.S.C. § 2422(b). The defendant agrees that he is in fact guilty of these charges and that the facts set forth in the Factual Basis for Plea attached hereto as Exhibit A are accurate.

The defendant agrees that this plea agreement will be filed with the Court and become a part of the record of the case. The defendant understands and agrees that he will not be allowed to withdraw his plea should the Court not follow the government's sentencing recommendations.

The defendant agrees that the statements made by him in signing this Agreement, including the factual admissions set forth in the factual basis, shall be admissible and useable against the defendant by the United States in any subsequent criminal or civil proceedings, even if the defendant fails to enter a guilty plea pursuant to this Agreement. The defendant waives any rights under Fed. R. Crim. P. 11(f) and Fed. R. Evid. 410, to the extent that these rules are inconsistent with this paragraph or with this Agreement generally.

1. Waiver of Indictment:

The defendant acknowledges that under the United States Constitution he is entitled to be indicted by a grand jury on the charges to which he is pleading guilty and that pursuant to Fed.R.Crim.P.

7(b) he agrees to waive any and all rights he has to being prosecuted by way of indictment to the charges set forth in the information. The defendant agrees that at a time set by the Court, he will sign a written waiver of prosecution by Indictment and consent to proceed by Information rather than by Indictment.

2. Remand.

The defendant acknowledges that the crime to which he is pleading guilty is listed in 18 U.S.C. § 3143(a)(2), and he agrees that he will remain in custody upon the entry of his plea.

B. Fine.

The defendant reserves the right to argue to Probation and at sentencing that he is unable to pay a fine, and that no fine should be imposed. The defendant understands that it is his burden to affirmatively prove that he is unable to pay a fine, and agrees to provide a financial statement under penalty of perjury to the Probation Officer and the government in advance of the issuance of the draft Presentence Investigation Report, along with supporting documentation. The government retains the right to oppose the waiver of a fine. If the Court imposes a fine, the defendant agrees to pay such fine if and as ordered by the Court, up to the statutory maximum fine for the defendant's offense.

C. Special Assessment.

The defendant agrees to pay a special assessment of $5,100 at the time of sentencing by delivering a check or money order payable to the United States District Court to the United States Probation Office immediately before the sentencing hearing. *See* 18 U.S.C. § 3013(a)(2)(A) and 3014(a)(4). If the defendant is unable to pay the special assessment at the time of sentencing, he agrees to earn the money to pay the assessment, if necessary by participating in the Inmate Financial Responsibility Program.

D. Violation of Plea Agreement by Defendant/Withdrawal of Plea.

If the defendant violates this plea agreement or the terms of the accompanying sealed memorandum in any way, withdraws his plea, or tries to withdraw his plea, this plea agreement is voidable at the option of the government. If the government elects to void the agreement based on the defendant's violation, the government will no longer be bound by its representations to the defendant concerning the limits on criminal prosecution and sentencing as set forth herein. A defendant violates the plea agreement by committing any crime or providing or procuring any statement or testimony

which is knowingly false, misleading, or materially incomplete in any litigation or sentencing process in this case, or engages in any post-plea conduct constituting obstruction of justice. Varying from stipulated Guidelines application as set forth in this agreement, personally or through counsel, also constitutes a violation of the plea agreement. The government also shall have the right (1) to prosecute the defendant on any of the counts to which he pleaded guilty; (2) to reinstate any counts that may be dismissed pursuant to this plea agreement; and (3) to file any new charges that would otherwise be barred by this plea agreement. The defendant shall thereafter be subject to prosecution for any federal criminal violation of which the government has knowledge. The decision to pursue any or all of these options is solely in the discretion of the United States Attorney's Office.

By signing this plea agreement, the defendant agrees to waive any objections, motions, and defenses that the defendant might have to the government's decision. Any prosecutions that are not time-barred by the applicable statute of limitations as of the date of this plea agreement may be commenced in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this plea agreement and the commencement of any such prosecutions. The defendant agrees not to raise any objections based on the passage of time with respect to such counts including, but not limited to, any statutes of limitation or any objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth Amendment to any counts that were not time-barred as of the date of this plea agreement. The determination of whether the defendant has violated the plea agreement will be under a probable cause standard.

In addition, (1) all statements made by the defendant to the government or other designated law enforcement agents, or any testimony given by the defendant before a grand jury or other tribunal, whether before or after this plea agreement, shall be admissible in evidence in any criminal, civil, or administrative proceedings hereafter brought against the defendant; and (2) the defendant shall assert no claim under the United States Constitution, any statute, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule, that statements made by the defendant before or after this plea agreement, or any leads derived therefrom, should be suppressed. By signing this plea agreement, the defendant waives any and all rights in the foregoing respects.

E. **Asset Disclosure.**

The defendant agrees to make a full and complete disclosure of his assets and financial condition, and will complete the United States Attorney's Office's "Authorization to Release Information" and "Financial Affidavit" within five (5) weeks from the entry of the defendant's change of plea, including supporting documentation. The defendant also agrees to have the Court enter an order to that effect. The defendant understands that if he fails to complete truthfully and provide the described documentation to the United States Attorney's office within the allotted time, he will be considered in violation of the agreement, and the government shall be entitled to the remedies set forth in section II.E above.

### III.    THE GOVERNMENT'S OBLIGATIONS

A. **Other Charges.**

The government agrees not to bring any other charges arising from the conduct outlined in the Factual Basis attached hereto as Exhibit A. The government may bring other charges arising from the conduct outlined in the Factual Basis if this agreement is voided as set forth herein, or as provided in paragraphs II.E (Violation of Plea Agreement by Defendant/Withdrawal of Plea), VI.B (Stipulations Affecting Guideline Calculation), and VII.B (Waiver of Appeal and Collateral Attack) herein, or as provide in the separate sealed memorandum filed in connection with the defendant's plea.

B. **Recommendations.**

　　　　1.    Incarceration Range.

The government will recommend that the defendant be sentenced to the low end of the applicable guideline range (including the application of the 120-month mandatory statutory minimum term) as determined by the Court.

　　　　2.    Acceptance of Responsibility.

The government will recommend a two-level reduction (if the offense level is less than 16) or a three-level reduction (if the offense level reaches 16) in the computation of his offense level if the defendant clearly demonstrates acceptance of responsibility for his conduct as defined in U.S.S.G. § 3E1.1. This includes the defendant meeting with and assisting the probation officer in the preparation of the pre-sentence report, being truthful and candid with the probation officer, and not otherwise engaging

PLEA AGREEMENT                                       5

in conduct that constitutes obstruction of justice within the meaning of U.S.S.G § 3C1.1, either in the preparation of the pre-sentence report or during the sentencing proceeding.

      C.    **Use of Information for Sentencing.**

The government is free to provide full and accurate information to the Court and Probation, including answering any inquiries made by the Court and/or Probation and rebutting any inaccurate statements or arguments by the defendant, his attorney, Probation, or the Court. The defendant also understands and agrees that nothing in this Plea Agreement bars the government from defending on appeal or collateral review any sentence that the Court may impose.

## IV. ELEMENTS OF THE OFFENSE

At a trial, the government would have to prove beyond a reasonable doubt the following elements of the offense to which the defendant is pleading guilty, Attempted Enticement of a Minor, in violation of 18 U.S.C. § 2422(b):

> First, that between in or around November 2020 and on or about January 15, 2021, the defendant attempted to use a means or facility of interstate commerce, to wit a cell phone connected to the Internet or the social media platform Facebook, to knowingly persuade, induce, or entice an individual to engage in prostitution in violation of the laws of the State of California, to wit California Penal Code §§ 653.22 and 653.23;

> Second, the defendant believed that the individual he attempted to persuade, induce, or entice was under the age of 18; and

> Third, the defendant did something that was a substantial step toward committing the crime and that strongly corroborated the defendant's intent to commit the crime.

> Mere preparation is not a substantial step toward committing the crime. To constitute a substantial step, a defendant's acts or actions must unequivocally demonstrate that the crime will take place unless interrupted by independent circumstances.

The defendant fully understands the nature and elements of the crime charged in the Information to which he is pleading guilty, together with the possible defenses thereto, and has discussed them with his attorney.

///

V. **MAXIMUM SENTENCE**

A. **Maximum Penalty.**

The maximum sentence that the Court can impose is a life term of incarceration, a fine of $250,000, a lifetime period of supervised release, mandatory 5-year term of supervised release, and a special assessment of $5,100. The offense to which the defendant is pleading guilty carries a 10-year mandatory minimum term of incarceration.

B. **Violations of Supervised Release.**

The defendant understands that if he violates a condition of supervised release at any time during the term of supervised release, the Court may revoke the term of supervised release and require the defendant to serve up to 5 additional years imprisonment.

VI. **SENTENCING DETERMINATION**

A. **Statutory Authority.**

The defendant understands that the Court must consult the Federal Sentencing Guidelines and must take them into account when determining a final sentence. The defendant understands that the Court will determine a non-binding and advisory guideline sentencing range for this case pursuant to the Sentencing Guidelines and must take them into account when determining a final sentence. The defendant further understands that the Court will consider whether there is a basis for departure from the guideline sentencing range (either above or below the guideline sentencing range) because there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the Guidelines. The defendant further understands that the Court, after consultation and consideration of the Sentencing Guidelines, must impose a sentence that is reasonable in light of the factors set forth in 18 U.S.C. § 3553(a).

B. **Stipulations Affecting Guideline Calculation.**

The government and the defendant agree that there is no material dispute as to the following sentencing guidelines variables and therefore stipulate to the following:

    1.    Base Offense Level: 28 (§ 2G1.3(a)(3)).

///

///

2. Specific Offense Characteristic Adjustment:

    a. Defendant's offense level should be increased by 2 levels because he used a computer or an interactive computer service—to wit, a cell phone connected to the Internet and Facebook—to persuade, induce, entice, coerce, or facilitate the travel of the minor to engage in prohibited sexual conduct—to wit, prostitution in Sacramento, California, in violation of California Penal Code §§ 653.22 or 653.23, pursuant to § 2G1.3(b)(3)(A).

3. Acceptance of Responsibility: See paragraph III.B.2 above

4. Criminal History: The parties agree that the defendant's criminal history will be determined by the Court.

5. Departures or Other Enhancements or Reductions:

The parties agree that they will not seek or argue in support of any other specific offense characteristics, Chapter Three adjustments (other than the decrease for "Acceptance of Responsibility"), or cross-references, except that the government may move for a departure or an adjustment based on the defendant's cooperation (§5K1.1) or post-plea obstruction of justice (§3C1.1). Both parties agree not to move for, or argue in support of, any departure from the Sentencing Guidelines. The defendant is free to recommend to the Court whatever sentence he believes is appropriate under 18 U.S.C. § 3553(a).

## VII. WAIVERS

### A. Waiver of Constitutional Rights.

The defendant understands that by pleading guilty he is waiving the following constitutional rights: (a) to plead not guilty and to persist in that plea if already made; (b) to be tried by a jury; (c) to be assisted at trial by an attorney, who would be appointed if necessary; (d) to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, constitutional challenges to the statutes of conviction, and other pretrial motions that have been filed or could be filed; (e) to subpoena witnesses to testify on his behalf; (f) to confront and cross-examine witnesses against him; and (g) not to be compelled to incriminate himself.

### B. Waiver of Appeal and Collateral Attack.

The defendant understands that the law gives the defendant a right to appeal his guilty plea, conviction, and sentence. The defendant agrees as part of his plea, however, to give up the right to appeal the guilty plea, conviction, and the sentence imposed in this case. The defendant understands that this waiver includes, but is not limited to, any and all constitutional and/or legal challenges to the

PLEA AGREEMENT          8

defendant's conviction and guilty plea, including arguments that the statutes to which defendant is pleading guilty are unconstitutional, and any and all claims that the statement of facts attached to this agreement is insufficient to support the defendant's plea of guilty. The defendant specifically gives up the right to appeal any order of restitution the Court may impose.

Notwithstanding the defendant's waiver of appeal, the defendant will retain the right to appeal if one of the following circumstances occurs: (1) the sentence imposed by the District Court exceeds the statutory maximum; and/or (2) the government appeals the sentence in the case. The defendant understands that these circumstances occur infrequently and that in almost all cases this Agreement constitutes a complete waiver of all appellate rights.

In addition, regardless of the sentence the defendant receives, the defendant also gives up any right to bring a collateral attack, including a motion under 28 U.S.C. § 2255 or § 2241, challenging any aspect of the guilty plea, conviction, or sentence, except for non-waivable claims.

Notwithstanding the government's agreements in paragraph III.A above, if the defendant ever attempts to vacate his plea, dismiss the underlying charges, or modify or set aside his sentence on any of the counts to which he is pleading guilty, the government shall have the rights set forth in Section II.E herein.

### C. Waiver of Attorneys' Fees and Costs.

The defendant agrees to waive all rights under the "Hyde Amendment," Section 617, P.L. 105-119 (Nov. 26, 1997), to recover attorneys' fees or other litigation expenses in connection with the investigation and prosecution of all charges in the above-captioned matter and of any related allegations (including without limitation any charges to be dismissed pursuant to this plea agreement and any charges previously dismissed).

### D. Impact of Plea on Defendant's Immigration Status.

Defendant recognizes that pleading guilty may have consequences with respect to his immigration status if he is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including the offense to which the defendant is pleading guilty. The defendant and his counsel have discussed the fact that the charge to which the defendant is pleading guilty is an aggravated felony, or a crime that is likely to be determined to be an aggravated felony under 8 U.S.C. §

1101(a)(43), and that while there may be arguments that defendant can raise in immigration proceedings to avoid or delay removal, it is virtually certain that defendant will be removed. Removal and other immigration consequences are the subject of a separate proceeding, however, and defendant understands that no one, including his attorney or the district court, can predict to a certainty the effect of his conviction on his immigration status. Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his plea may entail, even if the consequence is his automatic removal from the United States.

### E. Sex Offender Registration.

Defendant understands that by pleading guilty, defendant will be required to register as a sex offender upon his release from prison as a condition of supervised release pursuant to 18 U.S.C. § 3583(d). Defendant also understands that independent of supervised release, he will be subject to federal and state sex offender registration requirements, and that those requirements may apply throughout his life. The defendant understands that he shall keep his registration current, shall notify the state sex offender registration agency or agencies of any changes to defendant's name, place of residence, employment, or student status, or other relevant information. Defendant shall comply with requirements to periodically verify in person his sex offender registration information. Defendant understands that he will be subject to possible federal and state penalties for failure to comply with any such sex offender registration requirements. If he resides in California following release from prison, he will be subject to the registration requirements of California Penal Code § 290. Defendant further understands that, under 18 U.S.C. § 4042(c), notice will be provided to certain law enforcement agencies upon his release from confinement following conviction. As a condition of supervised release, defendant shall initially register with the state sex offender registration in California, and shall also register with the state sex offender registration agency in any state where defendant resides, is employed, works, or is a student, as directed by the Probation Officer. The defendant shall comply with all requirements of federal and state sex offender registration laws, including the requirement to update his registration information. Defendant shall provide proof of registration to the Probation Officer within 72 hours of release from imprisonment.

///

## VIII. ENTIRE PLEA AGREEMENT

Other than this plea agreement and the sealed memorandum filed in connection with the defendant's guilty plea, no agreement, understanding, promise, or condition between the government and the defendant exists, nor will such agreement, understanding, promise, or condition exist unless it is committed to writing and signed by the defendant, counsel for the defendant, and counsel for the United States.

## IX. APPROVALS AND SIGNATURES

### A. Defense Counsel.

I have read this plea agreement and the sealed memorandum filed in connection with the defendant's guilty plea and have discussed the documents fully with my client. The plea agreement and the sealed memorandum accurately and completely sets forth the entirety of the agreement. I concur in my client's decision to plead guilty as set forth in this plea agreement and the sealed memorandum.

Dated: 12/6/21

LEXI NEGIN
Assistant Federal Defender
Attorney for Defendant

### B. Defendant:

I have read this plea agreement and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Further, I have consulted with my attorney and fully understand my rights with respect to the provisions of the Sentencing Guidelines that may apply to my case. No other promises or inducements have been made to me, other than those contained in this plea agreement and a sealed memorandum filed in connection with my guilty plea. In addition, no one has threatened or forced me in any way to enter into this plea agreement. Finally, I am satisfied with the representation of my attorney in this case.

Dated: 12/6/21

ISAIH PHELPS
Defendant

C. **Attorney for United States:**

I accept and agree to this plea agreement on behalf of the government.

Dated:                                    PHILLIP A. TALBERT
                                          Acting United States Attorney

                                          /s/ Brian A. Fogerty
                                          BRIAN A. FOGERTY
                                          Assistant United States Attorney

EXHIBIT "A"

Factual Basis for Plea

Between in or around November 2020 and on or about January 15, 2021, in Sacramento County, in the State and Eastern District of California, and elsewhere, ISAIH PHELPS, using a facility or means of interstate commerce, knowingly attempted to persuade, induce, or entice a fictious person he believed was 16 years old girl (hereinafter, "A.E.") to engage in acts of prostitution in violation of the laws of the State of California, in violation of 18 U.S.C. § 2422(b).

I. **PHELPS USED FACEBOOK TO ENTICE A.E. TO ENGAGE IN PROSTITUTION.**

   A. **PHELPS controlled the "Rudeboii Drakeo" Facebook account.**

At all times relevant, PHELPS controlled the "Rudeboii Drakeo" Facebook account, which he used to communicate with purported 16-year-old A.E. On November 4, 2020, PHELPS first used the Rudeboii Drakeo account to send the officer controlling the A.E. account a Facebook message. Facebook is an Internet-based social media application that serves as a global communication platform.

   B. **PHELPS attempted to persuade A.E. to have sex with prostitution clients.**

PHELPS sent A.E. messages in which he proposed that A.E. make money by engaging in prostitution. On January 3, 2021, PHELPS, using the Rudeboii Drakeo account, sent A.E. a message stating "A u tryna take a trip abd make some money." On January 12, 2021, a law enforcement officer used the A.E. account to respond "wat u tryin to do to make money." PHELPS responded minutes later with the message "That's on u shorty." When the law enforcement officer posing as A.E. asked "whatcha mean by that," PHELPS stated "I mean what you tryna do u can strip sell work or bust dates." The term "strip" refers to nude dancing, the term "selling work" refers to selling illegal drugs, and "busting dates" is a term that refers to engaging in prostitution.

On January 12, 2021, at approximately 9:17 p.m., the law enforcement officer posing as A.E. and PHELPS continued to discuss the plan for A.E. to engage in prostitution:

   **A.E.:** ive never done that before. I wouldnt kno where to start haha

   **Rudeboii Drakeo:** With wat part ?

   **Rudeboii Drakeo:** U down to bust dates ?? Lil ma

   **A.E.:** wat does that mean? Lol

PLEA AGREEMENT A-1

**A.E.:** sry im not the smartest

**Rudeboii Drakeo:** Are you a cop or affiliated with any law enforcement agency's

**A.E.:** lol no.

**A.E.:** ur funny

C. <u>The law enforcement officer posing as A.E. told PHELPS that A.E. was 16 years old.</u>

Shortly after PHELPS proposed that A.E. "bust dates," the law enforcement officer posing as A.E. told PHELPS that A.E. was 16 years old, stating "wat u were talkin about. bustin dates. Im 16 so idk everything [two laughing emojis]." In response, PHELPS stated, "Lmao zam u young."

D. <u>PHELPS continued to recruit A.E. to engage in prostitution.</u>

Following the disclosure about A.E.'s age, PHELPS asked for and a law enforcement officer provided A.E.'s purported cell phone number. On January 12, 2021, at approximately 9:45 p.m., PHELPS sent the law enforcement officer posing as A.E. a text message stating "Hey." When the officer responded, "whose this," PHELPS stated "Drakeo you gave me ur number on fb."

On January 13, 2021, at approximately 10:13 a.m., PHELPS asked A.E. to send a photo of herself with the two-finger peace sign in front of her face. PHELPS indicated that he wanted to see the photo to confirm that A.E. was "real." A law enforcement officer sent PHELPS the requested photo depicting a real person who was posing as the 16-year-old A.E. holding up the peace sign. PHELPS responded, "Zam u are real lmao."

After trying to confirm that A.E. was a real person, Phelps asked A.E. a series of questions, texting, "Frist one is how comfortable are u in ur own skin"; "Ok next question is do u fw niggas like blazk guys??"; "Next question do u suzk dizk"; "U live in reno right. Who u stay wit"; and "But bext question do u like girls."

Later on January 13, 2021, PHELPS sent A.E. text messages describing how he planned to manage her prostitution activity:

>**PHELPS:** U ever hoe
>
>**PHELPS:** ??
>
>**A.E.:** I have not. Wat do i gotta do?

PLEA AGREEMENT                                        A-2

**A.E.:** Can I make a lot of mlney?

**PHELPS:** You dont know what hoeing is?

**A.E.:** Umm. I think so? [emojis]

**A.E.:** ??

**PHELPS:** Wat u think it is

**PHELPS:** ??

**A.E.:** Is it where i like have sex with guys for money?

**PHELPS:** Sumn like dat yea youdd make hella money lul babby

**A.E.:** Hpw much would they pay me?

**PHELPS:** Well ill be the one who fine the guys and talk prices all u got ado is collect the money and do yo thang and bring me bazk da money

**PHELPS:** but ull be taken care of food clothes jewelry nails hair all that

**PHELPS:** And you get to travel and live a hole new life

**A.E.:** Oh wow. I do like to travel

E.  **PHELPS offered to purchase a bus ticket for A.E. to travel from Reno to California.**

On January 13, 2021, at approximately 12:17 p.m., PHELPS asked A.E., "U wanna come .ake some money." The law enforcement officer posing as A.E. responded, "Can u come and get me?" PHELPS texted, "I can get you a ride or a buss ticket," later indicating that A.E. would be coming to "Cali."

F.  **PHELPS requested nude photos of A.E. to use to attract prostitution clients.**

On January 13, 2021, PHELPS asked A.E. to send nude photos of herself. PHELPS sent texts stating, "And I meant a titty pic love. Wit nun on. Im asking for pics so I can start tryna find money for you to make when u come bazk." Later on January 13, 2021, PHELPS texted A.E., "And wasup wit some freaky pics so I can start getting u dates set up. They one wanna see yo titys and ur face to i got one of ur ass so that's good." The term "dates" refers to commercial sex acts.

///
///
///

G. <u>PHELPS and the person posing as A.E. communicated briefly via video call.</u>

On the evening of January 13, 2021, the person posing as A.E., at the direction of law enforcement officers, participated in two short video calls with PHELPS. After the video calls with the person posing as A.E., PHELPS sent a Facebook message to the A.E. stating, "Your fine af lul ma."

H. <u>PHELPS told A.E. to lie about her age and delete the messages about her true age.</u>

Approximately 7 minutes after PHELPS' video call, he sent A.E. a message stating, "So ur 18 now. Ok." PHELPS explained that A.E. needed to delete the messages in which they discussed her true age. He indicated that he would obtain a fake identification for A.E. Set forth below is an excerpt of this portion of the messages between A.E. and PHELPS:

**A.E.:** Lol I'm 16. I told you this. Haha smh

**Rudeboii Drakeo:** No ur gonna be 18 now

**Rudeboii Drakeo:** Ima get u a fake id

**A.E.:** Kk [smiling emoji]

**Rudeboii Drakeo:** Deleat our messages ima do the same and re hyu and ask how old u are send me a screen shot of our convo after u do it

I. <u>PHELPS explained how A.E. would make money by performing commercial sex acts.</u>

On January 13, 2021, PHELPS used Facebook to describe for A.E. how she would make money by performing sex acts.

**Rudeboii Drakeo:** U gone make hella money fosho

**A.E.:** rly?

**Rudeboii Drakeo:** U fr gone be down to fuzk and suzk ppl for money

**A.E.:** If i can make a lot of money

**A.E.:** like u said

**Rudeboii Drakeo:** Yea u can fosho

**A.E.:** :)

**Rudeboii Drakeo:** But its based off how many dates u down to bust

**A.E.:** ooo

**A.E.:** how many do I need to do??

PLEA AGREEMENT                                A-4

**Rudeboii Drakeo:** How ever many u want some will be for 200 some will be for4 or 5

**Rudeboii Drakeo:** It all depends wat they want

**Rudeboii Drakeo:** And how lonf

**Rudeboii Drakeo:** Long

**A.E.:** Oohh

**A.E.:** wat do I gotta do for 200?

**Rudeboii Drakeo:** Proly suck dick or fuck someone for 10 15 min

**A.E.** thats it??

**A.E.:** haha

**Rudeboii Drakeo:** fs

**Rudeboii Drakeo:** Yea

**Rudeboii Drakeo:** U down?

**A.E.:** ya

**A.E.:** im about to make hella money hahaha

**Rudeboii Drakeo:** Its up 2 u if u want em to were condoms no condom is more mon

II. <u>PHELPS PURCHASED A BUS TICKET FOR A.E. AND TRIED TO MEET HER AT THE SACRAMENTO GREYHOUND STATION.</u>

Between January 14 and 15, 2021, PHELPS and A.E. communicated about PHELPS obtaining a fake identification for A.E. The fake identification would enable A.E. to take a bus from Reno to Sacramento. PHELPS directed A.E. to an address in Sparks, Nevada, where A.E. could pick up an identification card that belonged to a woman who was over 18 years old. PHELPS stated, "I need it to help you get money." Law enforcement officers, posing as if they were acting on behalf of A.E., went to the address that PHELPS provided and obtained the identification card.

Between January 14 and 15, 2021, PHELPS purchased a Greyhound bus ticket for A.E. to travel from Reno to Sacramento. PHELPS also continued to communicate with A.E. throughout the morning and early afternoon of January 15, 2021, attempting to ensure that A.E. boarded the bus and was traveling to Sacramento.

PLEA AGREEMENT          A-5

On January 15, 2021, at approximately 2:00 p.m., shortly after the scheduled arrival time for A.E.'s bus, law enforcement officers found PHELPS in the parking lot of the Sacramento Greyhound bus station. Law enforcement officers arrested PHELPS.

I have read and carefully reviewed the Factual Basis for Plea with my attorney. I agree that as it concerns my conduct it is true and correct. I also agree that if this matter proceeded to trial, the United States could establish each of the facts contained within the Factual Basis for Pleas beyond a reasonable doubt, and that those facts satisfy the elements of the offense to which I am pleading guilty.

Dated: 12/6/21

/s/ Isaih Phelps
ISAIH PHELPS
Defendant